morning. My name is Jerry Watley. I represent the petitioner, Mr. Patterson. Um, on the issue of the Wheeler-Batson claim of error, no deputy district attorney in a state case when asked to give his reasons, even if they are the forbidden racial reasons for giving or making a preemptory challenge, is ever going to cop out and say, yeah, I did it because of the member of the racial background of that prospective juror. So, and I think everyone recognizes that. And that's why, that's why the explanation that's given can't be taken at face value because if the prosecutor is exercising the challenge in bad faith, he's never going to admit it. And there's so many myriad of reasons that a prosecutor or any experienced attorney can come up with to explain why or to attempt to explain some racially, on a racially neutral basis, why that challenge was made. That's why the trial court has put into, I think the, challenging position of scrutinizing with great care, these explanations that are proffered. So in this case, for instance, if you just looked at the proffered reasons that the prosecutor offered for the last two Wheeler objections that were made, it looks like the facially, it was no prima facie case there, but if you scrutinize them as I believe a court should, as I believe the trial court should have, and as this court should now, one begins to wonder whether or not that prosecutor was really being candid. Well, I think you're right, but it isn't our problem that we're somewhat restricted by what Congress has told us we can do. We're not in a position very much to go beyond the face of it and scrutinize and say, if we were there, we would have found differently. We've got to say, is that an unreasonable application of federal law to the case? And that's pretty hard to do. Well, I, I understand that your honor. And I think though, that if a trial court has, has in the face of a, of a facially valid explanation, which was not measure up against the other factors in the case, that is an unreasonable application of federal, of federal law under, for instance, if, if, if, if in looking back at it on a comparative basis as to what other jurors who were accepted by the prosecutor said, if they had the same backgrounds, prosecutors willing to accept them, but not. No, he, he had it. The prosecutor had this man on the jury several times, hadn't he? He passed. Yes, he did. And, and with this, and with this one juror, juror number 12, that juror had, had been in the box, the 12 initially called von Ehrman from the very beginning and it passed him numerous times. I mean, I, from my rather limited observation of prosecutors, they're somewhat distrustful of people connected with universities. That could have been his real reason. This guy works for a university. I don't want him on the jury. Kind of anti-intellectual bias. You didn't want to say that. That's as plausible as the racial one. Granted that the crimes my client was convicted of were serious offenses. And I note that the appellee starts off talking about serious offenses. If you look at the circumstances that led to my client's prosecution, that is a traffic stop by a Beverly Hills police officer of two black men in the motor vehicle. That is what sends shock waves to a prosecuting attorney. He does not want a juror who appreciates, who has a sensitivity to the, to the unfortunately true fact that in the history of this country, even still today, law enforcement officers have discriminated against black motorists. And that's what drives fear into a prosecutor. And that's why it may push an otherwise totally ethical prosecutor over the line to challenge a black juror because he says, if I do not do it, you know, it's the only reason I had to do it is because they're black. I'm never going to be able, I may not be able to get a conviction here. And I think that's what, what occurred in this case. Mr. Cook, the attorney general states that I've, that I have impliedly conceded there was no, no prima facie case stated as to the fourth or to the last juror, juror number four. If I, if, if that's an objective evaluation of what I put in my brief, then I wrote a bad brief. I did not intend to concede that. I intended to argue that the exclusion or the, or the refusal or the overruling of juror four and 12, both were violated of the constitutional principles that are set forth in, in, in, in Wheeler. Other than looking at the stated excuse and seeing whether there's any surface plausibility to it. There's not much else to be done except perhaps looking at the composition of the panel and the jury and the numbers. Is there, I think you can look at the composition of the panel, but I, but I do not believe that just, just because there may end up being some minority members on the jury, but that means that the challenges to other minority members. No, that's true. We are, you know, it's very hard. You, you started by saying it puts the court in a difficult position. They've given a reason for a peremptory challenge and it doesn't have to be, there's no category of reasons that are acceptable for peremptories. So anything that any plausible reason why you might want this juror off other than a racial one. Well, if you, if you, if you compare the background of juror 12 with the background of other jurors there was nothing that that suggested that juror 12 has some qualities in his background that would maybe potentially a bad juror for the prosecution. Other than the fact he was a black man. What about what I suggested? He's connected with the university. I'm sorry. I didn't quite understand what you said. I suggested the reason the prosecutor really didn't want him was he's connected with the university. The way they were listed. What? I'm sorry. He's connected with a university. Well, I don't think the prosecutor said that. He didn't say it. You were saying whether I think in the background there is. Well, I, I would, I would urge that, that I, that a trial court nor any judge come to the assistance of a prosecutor to add reasons that may have justified the challenge. If he doesn't want to articulate those reasons. Well, I was just, you were speculating. I was speculating. And also, well, also that if that were the reason you would have to go back and see how many other people that were accepted, including apparently juror number seven was accepted, who was also affiliated with the university. So, so that could not have been the actual reason for challenging the juror. You have about two minutes left. Do you want to reserve some time for rebuttal? We understand your Griffin argument and I think that's pretty well presented in brief, unless you want to. I'm prepared to sit down now. And yeah, why don't you do that? And we'll, we'll hear from the government. Good morning, your honors, deputy attorney general, David Cook for respondent. I'd like to first point out, contrary to some comments that were made in the opening argument here, the AEDPA does not apply to the Batson claim. The claim was not denied on the merits and the standard of review under the AEDPA in 2254 only applies to state court denials that are on the merits. And here in this case, the state court denied the court of appeal. That is denied the claim pursuant to a procedural bar, the failure to object on Batson grounds. So therefore the standard of review in this case is de novo. And that, that was set forth in the, in the police. I suppose when you start getting the prejudice, in other words, effective assistance and failure to raise the Batson claim, then that takes you back kind of to the merits of the Batson claim. Well, no doubt that the, was there a decent Batson claim to be made is one of the questions I suppose you're going to ask. Well, I guess, I guess I'm not quite following exactly, but as far as the standard of review, it would be de novo. And then this court would look at the factors under Batson to determine whether violation occurred. I would like to point out some or address some comments made by Judge Noonan. I don't think it is proper for this court to speculate as to the prosecutor's reasons for excusing the jurors at trial. I think the standard of review or the test articulated by Batson is you look at the prosecutor's stated reason for, first of all, to determine whether it was facially neutral. And I think we're all, I think opposing counsel and I are in agreement that at least facially, that reason offered by the prosecutor was racially neutral. That's a juror 12, you mean? I agree with you. I was just meeting speculation with speculation. I appreciate that. That's both, I would say that's, that's as to juror number 12. Juror number 4, no prima facie case was found and whether opposing counsel has conceded that point or not, the record does show that the prosecutor was never asked by the trial court to give reasons for exercising a peremptory challenge as to juror number 4. Rather, the record shows that the prosecutor went forward to the trial court to explain to the trial court. He wanted to ask more questions of the juror before he exercised the peremptory. Well, let me ask you about that. Sequentially, when did this happen in the trial? Which juror came first in the colloquy, juror 12 or juror 4? Juror, well, juror 12 was the second Wheeler objection. Juror number 4 was the third Wheeler objection. After the colloquy had occurred on juror 12, where the court indicates that I think we're in the position where we have to explain, why wouldn't that extend to the subsequent discussion on juror 4? Because as part of the discussion for juror number 12, the court said to the prosecutor, if you want more information about a juror before you exercise a peremptory, ask me. And in line with that statement from the trial court, the prosecutor came forward and asked the trial court, I'm inclined to exercise a peremptory. I need more information and here are some more questions I'd like you to ask. In the context of that discussion, the trial court decided and the prosecutor decided that no further questions were necessary. And at that point, the peremptory was exercised. But unlike this court's decisions, where an implied finding of a prima facie case is found when the trial court asks the prosecutor for reasons that did not occur in this case, rather it was the prosecutor who came forward and in line with the trial court's prior order, explained what he needed to find out more about this juror before exercising peremptory. What do you make of the comment? And I'm speaking from memory now, but if I recall it correctly, the court said with juror number 12, I think we're getting into the area where we have to explain your reasons. Something like that. Something like that. Yes. So that happens with juror 12. Then subsequently we have a situation and then of course the colloquy you described that you ought to come forward if you have any more questions. But then juror four, the colloquy about juror four occurs after that. It seems to me that at that point in the trial or in the voir dire, prosecutor's on notice that if he wants to use a peremptory against a minority juror, that he's got to explain. No question about it, Your Honor. However, the prosecutor had not exercised the peremptory at the time that discussion occurred. And that I believe is a key distinction. After the colloquy occurred regarding juror number four, at that point, the prosecutor said, I'm exercising my peremptory. No further explanation was asked of, asked by the trial court and no express finding of a prima facie case of peremptory. Therefore, I don't believe the implied finding rulings of this court would apply to that situation. Okay. I understand your argument. Let me ask you a guy, I'm curious about juror four and I wanted to just ask you a couple of questions before we sat down with that. It seems to me that in looking at the reasons given, if I'm not calling it correctly, he said, I don't like letter carriers, right? Something about that. Yes. But there were letter carriers, there was a letter carrier admitted on the jury. I believe there was another letter carrier who was part of the panel who asked to be excused. And as to that other letter carrier, the other letter carrier was an African American woman and the prosecutor during the colloquy regarding juror number four did say, I am uncomfortable with letter carriers as a general rule. However, I look for other things that would allow me to not exercise the occupation. And in that vein, the prosecutor asked the trial court to ask more questions of juror number four regarding his prior, I believe it was his prior police experiences. Right. And then there's also, he referenced a prior jury experience of, he said, well, I allowed that juror on because if, again, this is from memory, but I allowed that juror on because she had prior jury experience. And, and then it, I mean, it appears to me just to cut to the bottom line, so you can respond. It looks to me that if you analyze what the panel was, it's largely pretextual because the jury experience of this particular person was greater than many of the others on there. And you have another letter carrier who the only reason he allows on is because of jury experience is equivalent to the juror at hand. Hardly pretextual, Your Honor. First of all, if, well, unlike the Collins case, which I believe opposing counsel has brought to this court's attention, and I believe you were a member of that panel. That's right, Gannon. My attention was already focused on that. Pretext was found in that case because there were factors, there were, the record showed that the stated reasons of the prosecutor were undercut or controverted by other, other information in the record. For example, that prosecutor believed that jurors of a young age would be more inclined to be lenient toward a drug user. Well, that the juror that was excused was also on record in the jury questionnaire, I believe, to say, I have no prior ill feeling or bias against drug users. So the credibility of the prosecutor was in question in that case. In this case, however, Your Honor, there's no such undercutting of the credibility of the prosecutor. And as I said before, the prosecutor asked the trial court to ask more questions regarding the prior jury experience regarding the prior police experience of juror number four. The trial court, based upon what the prosecutor said and the prosecutors and the matters that occurred before the trial court in the courtroom believed, I think it was the trial court and believed that that inquiry was not necessary and that no prima facie showing of discrimination was made at that point. So unlike Collins, juror number four was not, there was no prima facie showing of discrimination by the trial, or I should say no prima facie case found as to juror number four. Let me see. I've taken up enough of your time with my questions. I want to make sure you get in your argument and my colleagues get the questions that they want to ask. Well, I wanted to respond to another point made by opposing counsel and that was as to juror number 12, the prosecutor passed on the panel five times with juror number, or passed on the panel several,  I'm not quite sure how many times with juror number 12 on the panel. And somehow that that shows a discriminatory intent because he waited to the last minute. I find that argument to be such that it would cut both ways. Had the prosecutor excused juror number 12 right after that juror was sat on the jury, an immediate challenge to a person who is a racial minority, I think that would send a stronger red flag of racial discrimination or discriminatory intent than to wait. If you go back and I asked this court to go back again and look at the entire, if I may finish this. Sure. Sure. Absolutely. To go back and read through in context, the discussions by the prosecutor opposing defense counsel in the trial court regarding each of these Wheeler objections. The record is a lot different than you'll than the record presented in Collins. As this court, as your honor found there were inconsistencies, strong ones in the Collins case that are just not present here. For example, as to juror number 12, the prosecutor believed that that juror was not responsive to the other jurors. Well, that that concern about juror number 12 went to the very heart of what jurors are supposed to do. Interact with the other jurors in reaching a verdict in the case. As to juror number four, the prosecutor in all candor came forward and asked the trial court, I'm inclined to excuse this person, but I would like more information. I don't like letter carriers. I liked that letter carrier because there were up the other letter carrier because there were other factors that made me want to keep her on the panel. But as to juror number four, I need more information. I don't think when you look at all of the prosecutor's conduct during jury selection in context, you will find, or you, you should find that this, you should find that this prosecutor was not operating with a discriminatory intent during jury selection. Unless the court has further questions about this or the Griffin error. Thank you, counsel. Thank you, your honors. Rebuttal. As I said and listened to Mr. Cook's presentation, I thought what a fine job he's doing. And I hope that that doesn't do more than just acknowledge that he's a very talented lawyer. It doesn't mean that his position is valid though. And that is also, you see this prosecutor who prosecuted this case, presumably is also a very talented lawyer. And the fact that he had these rationalizations, you know, I don't like most letter carriers, but this one's all right. I mean, I think that I respectfully submit that that's, that's just pre pretextual that that prosecutor had these very serious crimes that he was prosecuting here. He knew he had to have a jury that wasn't going to be turned off by a traffic stop by a Beverly Hills police officer. So those five jurors, those five black men that he excused who knew what it was like to be driving, guilty of driving while black in California or America were excused. And that's the reason he excused them. And I think the record shows that to be the case. Thank you, counsel. Case has heard will be submitted. Thank you both for your arguments. The next two cases on the oral argument calendar have been removed, continued. And the next we'll hear argument in the next case schedule, which is Hemingway versus Unum Life.
judges: Canby, Noonan, Thomas